Mark Ankcorn (166871)
Roberto Robledo (260041)
ANKCORN LAW FIRM, PC
9845 Erma Road, Suite 300
San Diego, California 92131
(619) 870-0600
(619) 684-3541 fax
*mark@markankcorn.com*

Beth E. Terrell (178181)
Kim L. Gunning (to be admitted Pro Hac Vice)
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
(206) 816-6603
(206) 350-3528 fax
*bterrell@tmdwlaw.com*

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Pamela Cloud**, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Real Time Group, Inc.**,<br><br>Defendant. | Case No. 12-cv-1470 JAH (BLM)<br><br>**First Amended Complaint**<br><br>Class Action<br><br>Jury Trial Demanded |

Plaintiff Pamela Cloud ("Plaintiff") individually and on behalf of all others similarly situated, makes the following allegations and claims against Real Time Group, Inc. ("Defendant"), upon personal knowledge, investigation of her counsel, and on information and belief.

1.    This action seeks redress for business practices that violate the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.    The Court has jurisdiction to grant the relief sought by Plaintiff pursuant to 47 U.S.C. § 227(b) and 28 U.S.C. § 1331.

3.     Venue is proper in the district as Plaintiff resides in San Diego County and the actions which give rise to this Complaint occurred in this District.

**Parties**

4.     Plaintiff Pamela Cloud is a natural person who resides in San Diego County, California, and within the Southern District of California.  Plaintiff is the account holder of a cellular telephone number and pursuant to the terms of her contract is charged for each call within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

5.     Real Time Group, Inc., is one of the largest specialty servicers of real estate mortgage loans in the country and specializes in residual loan workouts, including non-mortgage debts, for other large financial institutions.  It operates from its principal place of business at 1750 Regal Row, Dallas, Texas 75235.

**Facts**

6.     Directly as well as through its subsidiaries, contractors and agents, Defendant employs hundreds of persons at various call centers throughout the country.  These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the hundreds of thousands of accounts serviced by Defendant.

7.     A significant portion, if not a majority, of Defendant's business operations are dedicated to servicing consumer loans that are in default, foreclosure, have been charged off by the original lender, or are subject to discharge in bankruptcy.

8.     Part of Defendant's regular business practice is to make repeated phone calls to persons it believes responsible for paying past-due mortgage loans.

9.     On or before November 4, 2010, Defendant began calling Plaintiff on her personal cellular telephone. She has no business relationship with Defendant nor did she ever give consent to Defendant to call her cellular telephone.

10.     Over the next year, Defendant placed dozens of calls at different times to Plaintiff's cellular telephone.  Defendant frequently, though not always, left messages using an artificial or pre-recorded voice.

11.     Each of the calls placed by Defendant were made by means of an automatic telephone dialing system as defined by the Federal Communications Commission.

12.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing and debt collection practices. The TCPA regulates, *inter alia*, the use of automated dialing systems. Specifically, section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14.     On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed and prerecorded message calls to a wireless number by a creditor or on behalf of a creditor are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL65485 (F.C.C.) (2008).

15.     The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶10).

16.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff gave her express consent to call her cell

phone within the meaning of the statute. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

17.     Plaintiff never gave her express consent to receive calls on her cellular telephone.

18.     To the contrary, during several of the calls, Plaintiff clearly and unequivocally instructed Defendant and its agents to stop calling her cell phone.

19.     Defendant acted willfully or knowingly or both in calling numbers using an autodialer without regard to the TCPA or whether the number was assigned to a cellular telephone.

20.     At least 25 calls were placed by Defendant or its representatives, contractors, or agents, to Plaintiff's cellular telephone using an automatic telephone dialing system.

21.     The acts and omissions of unidentified agents were committed within the time and space limits of their agency relationship with their principal, Defendant Real Time Group, Inc.

22.     The acts and omissions of unidentified agents were incidental to or of the same general nature as the responsibility these agents were authorized to perform by Defendant in collection on consumer debts.

23.     By committing these acts and omissions against Plaintiff and other Class members, these unidentified agents were motivated to benefit their principal, Defendant Real Time Group, Inc.

24.     Defendant is therefore liable to Plaintiff and other Class members through the doctrine of respondeat superior for the intentional and negligent acts, errors, and omissions done in violation of law, including but not limited to violations of the TCPA.

25.     In calling Plaintiff on her cellular telephone lines dozens of times at multiple times per day, Defendant violated 47 U.S.C. § 227(b).

## Class Action Allegations

26.     Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and on behalf of all others similarly situated.

27.     The proposed Class that Plaintiff seeks to represent is defined as follows:

All persons within the United States who, on or after June 15, 2008, received an non-emergency telephone call from Defendant to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls.

28.    Collectively, these persons will be referred to as "Class members."  Plaintiff represents, and is a member of, the Class.  Excluded from the Class is Defendant and any entities in which Defendant or its subsidiaries or affiliates have a controlling interest, Defendant's agents and employees, the judicial officer to whom this action is assigned and any member of the court staff and immediate family, and claims for personal injury, wrongful death, and emotional distress.

29.    Plaintiff does not know the exact number of members in the Class, but based upon Defendant's public statements regarding its business in the United States, Plaintiff reasonably believes that Class members number at minimum in the hundred thousands.  This Class size includes consumers who are borrowers on a mortgage loan serviced or co-serviced by Defendant, as well as persons who co-signed for such debts; other consumer and business loans serviced by Defendant or its affiliates; and all other persons whom Defendant or its affiliates, agents, contractors, or employees dialed (or mis-dialed).

30.    There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including, whether Defendant made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, in violation of the TCPA.

31.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

32.    Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class and complex litigation.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for the following reasons:

        a.   It is economically impractical for members of the Class to prosecute individual actions;

        b.   The Class is readily definable; and

        c.   Prosecution as a class action will eliminate the possibility of repetitious litigation.

34.     A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

35.     Class wide relief is essential to compel Defendant to comply with the TCPA.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

36.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with the respect to the Class as a whole appropriate.  Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## First Claim for Relief

37.     Plaintiff re-alleges and incorporate by reference the above paragraphs as though set forth fully herein.

38.     The foregoing act and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

39.     As a result of Defendant's negligent violations of the TCPA, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

40.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such negligent conduct that violates the TCPA by Defendant in the future.

## Second Claim for Relief

41.     Plaintiff re-alleges and incorporate by reference the above paragraphs as though set forth fully herein.

42.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing or willful, or both, violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

43.     As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

44.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such willful conduct that violates the TCPA by Defendant in the future.

45.     Plaintiff demands a jury trial on each of the causes of action set forth above, including the amount of statutory damages.

///

**Prayers for Relief**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant Real Time Resolutions, Inc. for the following:

1. An injunction against the calling of cellular telephones by Defendant and its contractors, agents and employees, except where the cellular telephone subscriber has provided prior express consent to the calls;

2. Damages pursuant to 47 U.S.C. § 227(b)(3);

3. Costs of litigation and reasonable attorneys' fees;

4. Such other and further relief as the Court may deem just and proper.


Dated:      June 18, 2012                    ANKCORN LAW FIRM, PC

                                             */s/ Mark Ankcorn*

                                             Attorneys for Plaintiffs


                                             TERRELL MARSHALL DAUDT
                                             & WILLIE, PLLC

                                             */s/ Beth Terrell*

                                             Attorneys for Plaintiffs